H · 05 - 2458

CIVIL NO. _____





United States Courts
Southern District of Texas
FILED

JUL 1 5 2005

Michael N. Milby, Clerk

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**MICHAEL JOSEPH SIEMER,**
**Petitioner**

**V.**

**DOUGLAS DRETKE, DIRECTOR**
**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
**INSTITUTIONAL DIVISION,**

**Respondent**

## PETITION FOR WRIT OF HABEAS CORPUS

Walter M. Reaves, Jr
P.O. Box 55
West, Texas 76691
Telephone # 254-826-3713
Fax # 254-826-5572
S.B.O.T. No. 164644200

**ATTORNEY FOR PETITIONER**

1

TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

LIMITATIONS AND EQUITABLE ESTOPPEL . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

GROUNDS FOR GRANTING RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I. THE TRIAL COURT'S ADJUDICATION OF GUILT VIOLATED PETITIONER'S
RIGHT TO DUE PROCESS OF LAW WHERE SUCH ADJUDICATION WAS BASED
ON VAGUE, OVERLY BROAD AND IMPERMISSIBLE CONDITIONS. . . . . . . . . 10

II. PETITIONER'S PLEA WAS INVOLUNTARY WHERE IT WAS BASED ON VAGUE,
OVERLY BROAD AND IMPERMISSIBLE CONDITIONS OF PROBATION. . . . . . 10

III. PETITIONER'S COUNSEL FAILED TO RENDER REASONABLY EFFECTIVE
ASSISTANCE OF COUNSEL, WHERE HE FAILED TO RAISE A DUE PROCESS
OBJECTION TO THE USE OF VAGUE CONDITIONS TO ADJUDICATE
PETITIONER'S GUILT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV. *TEXAS CODE CRIM. PROC. ART. 42.12* § 5, IS UNCONSTITUTIONAL BECAUSE
IT- DEPRIVES DEFENDANTS OF A MEANINGFUL APPEAL IN VIOLATION OF DUE
PROCESS, AND ALSO DEPRIVES PETITIONER OF EQUAL PROTECTION IN
VIOLATION OF THE UNITED STATES CONSTITUTION. . . . . . . . . . . . . . . . . . . 18

V. IMPOSITION OF A 20-YEAR SENTENCE AFTER PETITIONER WAS
PLACED ON PROBATION FOR A PERIOD OF 10 YEARS AND HAD BEGUN
COMPLYING WITH THE CONDITIONS OF HIS PROBATED SENTENCE
VIOLATED THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT
OF THE UNITED STATES CONSTITUTION. . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI. PETITIONER'S PLEA WAS INVOLUNTARY AND VIOLATED DUE
PROCESS OF LAW AND THE EX POST FACTO PROVISIONS UNDER THE
UNITED STATES CONSTITUTIONS BECAUSE HE WAS INFORMED BEFORE
HE ENTERED HIS PLEA THAT IF HIS GUILT WAS EVER ADJUDICATED HE
WOULD BE ALLOWED TO APPEAL HIS CONVICTION; HOWEVER
SUBSEQUENT TO THE ENTRY OF HIS PLEA, THE COURT OF CRIMINAL

2

APPEALS DECIDED *MANUEL V. STARE*, WHICH DENIED PETITIONER A RIGHT HE HAD RELIED UPON IN PLEADING GUILTY. . . . . . . . . . . . . . 19

VII. PETITIONER'S PLEA WAS INVOLUNTARY BECAUSE HE WAS NOT ADMONISHED REGARDING THE RIGHTS HE WAIVED WHEN PLEADING GUILTY OR THE CONSEQUENCES SHOULD HIS GUILT BE ADJUDICATED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IX. PETITIONER'S PLEA WAS INVOLUNTARY BECAUSE HE WAS NEVER ADMONISHED THAT AS A DIRECT RESULT OF HIS GUILTY PLEA, HE WOULD BE REQUIRED TO REGISTER WITH THE STATE OF TEXAS AS A SEX OFFENDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IX. THE SEX OFFENDER REGISTRATION PROGRAM VIOLATES THE EIGHTH AMENDMENT BAN AGAINST CRUEL AND UNUSUAL PUNISHMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## PRELIMINARY STATEMENT

Petitioner was indicted by the Grand Jury for Harris County, Texas, and charged with sexual assault of a child. He entered a plea of guilty, and the trial court deferred a finding of guilt, and placed Petitioner on probation for a period of ten years. The state subsequently filed a motion to adjudicate guilt, alleging Petitioner had violated the terms of his probation. Following a hearing on that motion, the trial adjudicated Petitioner's guilt, and sentenced him to 20 years in the Texas Department of Criminal Justice, Institutional Division.

Petitioner appealed both cases to the Fourteenth Court of Appeals in Houston, Texas.[1] That Court dismissed the Appeal for lack of jurisdiction on November 30, 2000. Petitioner then filed a petition for discretionary review, which was denied on September 12, 2001. Petitioner subsequently filed an Application for Writ of Habeas Corpus in the trial court. Findings of Fact and conclusions of law were entered, without an evidentiary hearing, on October 11, 2003. The Court of Criminal Appeals then denied relief on April 27, 2005. This is petitioner's first application for writ of habeas corpus filed in any federal court.

## STATEMENT OF RELEVANT FACTS

Petitioner was charged with sexual assault of a child. He pled guilty to that charge, and on May 10, 1995 the court entered an order deferring a finding of guilt, and placed petitioner on probation for a period of 10 years. The state subsequently filed a motion to adjudicate guilt, arguing petitioner had violated the conditions of probation. A hearing was

---

[1] The Cause Number in the Court of Appeals was 14-9-00848

4

held on that motion, and the court found petitioner had violated some of the conditions of

probation. On June 15, 1999 the court adjudicated petitioner's guilt, revoked his probation,

and sentenced him to 20 years in the Texas Department of Criminal Justice.

## STANDARD OF REVIEW

The rules governing habeas corpus proceedings are set forth in 28 U.S.C., Section

2254(d). That statute prohibits granting relief on any claim adjudicated on the merits in state

court, unless adjudication of the claim:

> "(1) resulted in a decision that was contrary to, or involved an
> unreasonable application of clearly established federal law, as determined by
> the Supreme Court of the United States; or

> "(2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the state court
> proceeding."

The Supreme Court recently clarified the rules for establishing harm under Section

2254(d). The Fifth Circuit had addressed this issue in *Drinkard v. Johnson*, 97 F.3d 751 (5th

Cir. 1996), overruled on other grounds, 521 U.S. 320 (1997) and vacated, *Williams v. Taylor*,

529 U.S. 389, 120 S.Ct. 1495 (2000). There, the Court adopted a broad construction of

"reasonableness, construing it to mean that "reasonable jurists considering the question

would be of one view that the state court ruling was incorrect." The Court rejected that

approach in *Williams*, holding "[d]efining an 'unreasonable application by reference to a

'reasonable jurist' however is of little assistance for the courts that must apply Section

2254(d)(1) and, in fact, may be misleading." *Williams, supra.* Such an approach is

5

misleading because it tends to focus attention "on a subjective inquiry rather than on an objective one." *id.* The Court went on to hold that merely because there may be conflicting authority does not mean a decision is reasonable. *Id.*

Petitioner suggests the first determination that must be made is whether the state court decision is correct. *Weeks v. Angelone*, 120 S. Ct. 727, 734 (2000). If there is no error, there is no need for further inquiry. If there is, the Court must go on to determine whether the state court's decision is "contrary to" the "clearly established precedent" or "unreasonably applied" clearly established precedent.

### A. "Contrary to"

A state-court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law. Second, a state-court decision is also contrary to Supreme Court precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that Court. *Williams, supra.*

### B. Unreasonable application.

An "unreasonable application" of the Court's clearly established precedent can occur in two ways. First, a state-court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from the Court's cases, but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of Supreme Court precedent

6

if the state court either unreasonably extends a legal principle from existing precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams.*

As the Court's decision in *Williams* illustrates, it is not sufficient to merely identify the correct legal precedent. The Court's must also reasonably apply that precedent. To determine reasonableness, the Court's reasoning must be examined. Where the Court correctly identifies the governing law, and makes a good faith attempt to apply it, the decision should be granted substantial deference. See, e.g. *Teague v. Lane*, 489 U.S. 288 (1989). Only where the court's reasoning is set out can a reviewing court determine whether the court made a good faith attempt to apply governing law. Where the reasoning or the basis of the decision is not set out, little deference should be granted. Without an explanation from the Court, a reviewing court has no way to determine whether the court applied the correct reasoning or not. Thus, the only alternative for the court is to independently review the case, and determine whether the right result was reached.

The review to be given such claims is suggested by *Williams* itself. There, the claim was that counsel was ineffective for not presenting various items of mitigating evidence during sentencing. The State Supreme Court concluded there was no reasonable probability the omitted evidence would have affected the jury's sentencing recommendation, and therefore there was no prejudice. The Supreme Court found this finding was unreasonable, and faulted the State Court for not considering the totality of the evidence. *Williams*

establishes that federal courts still have an important role to play in reviewing state convictions. They cannot merely defer to State Court decisions, but must instead conduct an independent analysis of the claim. If a federal court determines the resolution of a claim is "unreasonable" there is no bar to relief. For that reason, petitioner suggests this Court must carefully each claim in this case and determine for itself whether it is correct, and if not, whether it is reasonable.

## LIMITATIONS AND EQUITABLE ESTOPPEL

Petitioner concedes that this petition is not timely filed based on the time limits set forth in 28 U.S.C Section 2244(d)(i)[2]. However, petitioner suggests the doctrine of equitable estoppel prevents dismissal of the petition. There is no doubt that the limitation period established in Section 2244 is subject to equitable tolling. *Davis v. Johnson*, 158 F.3d 806 (5th Cir. 1998), *cert. Denied*, 526 U.S. 1074, 119 S.Ct. 1474 (1999).

In this case petitioner hired attorney George McCall Secrest to file both a state writ and a federal writ. Secrest agreed to pursue the matter in federal court, and file a federal writ if they were unsuccessful in state court. (Exhibit "A") The state court writ was filed before the limitation expired, so petitioner would have the opportunity to go into federal court. After the state writ was denied, Secrest reaffirmed that the federal writ would be timely filed. Both

---

[2]As noted above, the PDR was denied on September 12, 2001. The conviction therefore became final on December11, 2001, which would have been the expiration of the time for filing a petition for writ of certiorari. The writ application was filed in State court on December 6, 2003; at that point 360 days had elapsed. The clock started running again on April 27, 2005, when the writ was denied. Limitations would have run on or about May 2, 2005.

8

appellant and his family were concerned about the writ being filed, and they contacted Secrest's office on several occasions. (Exhibit "C") They were always assured that he was aware of the time limits, and would have the petition filed in time. Petitioner expected to receive a copy of the federal writ. Instead, he received a letter from Secrest indicating the time limits had expired, and no writ had been filed.(Exhibit "B")

There is  no doubt that equitable tolling is available only in "rare and exceptional circumstances". *Id.* Mere attorney error is not an extraordinary circumstance that would warrant equitable tolling. *Cousin v. Lensing*, 310 F.3d 843 (5th Cir. 2002). However, an attorney's intentional deceit can warrant equitable tolling where the petitioner reasonably relied on the deceptive misrepresentations. *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002).

Petitioner suggests this case involves more than "mere attorney error". This was not a situation where the date was miscalculated. Instead, Secrest correctly calculated the date, and knew when the petition was due. From petitioner's perspective, he did everything he could to ensure his federal writ would be timely filed. Perhaps more importantly, he was assured it would be. As a result, he took no further action, which ended up being to his detriment. In *Nara v. Frank*, 264 F.3d 310 (3rd Cir. 2001), the court noted equitable tolling is appropriate when a petitioner "has been unfairly prevented from asserting his rights in a timely manner." Petitioner suggests that clearly fits this case, and for this reason, the petition should not be dismissed.

<u>GROUNDS FOR GRANTING RELIEF</u>

**I. THE TRIAL COURT'S ADJUDICATION OF GUILT VIOLATED PETITIONER'S RIGHT TO DUE PROCESS OF LAW WHERE SUCH ADJUDICATION WAS BASED ON VAGUE, OVERLY BROAD AND IMPERMISSIBLE CONDITIONS.**

**II. PETITIONER'S PLEA WAS INVOLUNTARY WHERE IT WAS BASED ON VAGUE, OVERLY BROAD AND IMPERMISSIBLE CONDITIONS OF PROBATION.**

On May 10, 1995, petitioner pled guilty to- sexual assault of a child. On that date, the trial court imposed, inter alia, the following condition of probation in both cases:

"No unsupervised contact with any young men under age 21."

On August 10, 1995, the Court imposed the First Amended Conditions of Probation, including, inter alia:

"Defendant to have no unsupervised contact with anyone under age of 21 at any time, in any circumstance (work, home, family, friends, etc.)"[3]

On August 11, 1998, the conditions of probation were again amended to include additional terms such as DNA sample being collected and no use of the internet or possession of pornographic material.

On May 20, 1999, a Motion to Adjudicate Guilt was filed based upon technical violations alleging that petitioner had been in the presence, while unsupervised, of minors under the age of 21. Specifically, petitioner was dating a nineteen year old woman and he came into contact with her younger siblings. Nothing untoward was ever alleged, and certainly never proven. Although petitioner had substantially complied with the onerous and numerous provisions required by the trial court, his guilt was adjudicated and he was given

10

the maximum sentence in both cases.

A guilty plea must be voluntary and intelligent to satisfy due process requirements. *Boykin v. Alabama, 395* U.S. 238, 242-43, 89 S.Ct. 1709, 1711-1712 (1970)(holding that a plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, ... might be a perfect cover-up of unconstitutionality.) The test to determine the validity of a guilty or no contest plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164 (1970). Due process requires that a defendant be both advised of and understand the direct consequences of a plea. *Brady v. United States,* 397 U.S. 742,755,90 S.Ct. 1463, 1472,25 L.Ed.2d 747 (1970).

Petitioner suggests the imposition of a probation condition that he have no unsupervised contact with anyone under the age of 21 was impossible to follow, unless "contact" is narrowly construed. The consequences of petitioner's plea were such that to follow the terms faithfully he would have virtually been restricted to house arrest -with the hope that the United States Postal Service or the Federal Express delivery person had no carrier under age 21. Given the broad application of the term "contact"there was no way for petitioner to determine whether he was or was not in compliance with this condition.

In *United States v. Guagliardo,* 278 F.3d 868, 872-873 9th Cir. 2002), the Court considered whether the Due Process rights of a probationer were violated by the conditions of supervision which prohibited the possession of "pornography." In a well-reasoned opinion, the Court addressed the constitutional requisites of conditions of supervision or probation:

11

A probationer, however, has a separate due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison. *See Grayned v. City of Rokford,* 408 U.S. 104, 108-109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ( "we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly"); *United States v. Schave,* 186 F.3d 839, 843 (7th Cir. 1999).

One of the conditions in "*Guagliardo* was that he not reside in "close proximity" to places frequented by children. The court held that condition, was vague because it leaves "close proximity" undefined".

Similarly, in the instant case, petitioner was subjected to no unsupervised contact with anyone under the age of 21. Clearly, in life, any person will have contact with someone under the age of 21, probably on a daily basis. The vagueness of "unsupervised contact" renders the terms unreasonable and unenforceable.

In the instant case, probation officers Mary Cone and Sejal Trivedi testified it was they who explained what the terms meant — not the judge. Mary Cone stated that she personally told the petitioner not to have contact with anyone under 21, as did Sejal Trivedi. As to the condition of "no unsupervised contact" — there was no definition of *who* the third person would be. When questioned whether the other person could be someone under 16, Cone stated that although it was not in the terms, it was "understood" that the other person was an adult. (Vol. 2 — 14-18). Clearly, it was not understood. Sejal Trivedi testified that "contact" meant "being around anybody that is under the age of 21.Petitioner suggests the probation officers understanding of what was clear, and what the interretation of the terms were was not sufficient to put petitioner on notice of what was prohibited.

12

One of the fundamental requirements of due process is notice. *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240 (1958). In the context of probation, notice should encompass adequate notice of what a probationer is expected to do, and what he cannot do. Thus, a condition of probation must "inform the probationer with sufficient certainty of what he is to do. A condition of probation is not valid if it is vague and indefinite.

Petitioner suggests the conditions in this case were patently vague and unclear and provided Petitioner with no guidance as to what was expected from him by the court. The problem is with the term "contact", because it is susceptible of several different meanings. The term can mean "touch" or it can mean "communication". See, Webster's New World Dictionary (2d Coll. Ed) Normally, most individuals would consider the term to encompass touching in a sexual assault case, since the courts would not want offenders to physically come in contact with minors. A less apparent reading is communication, although it still might be assumed that the court would not want a probationer to communicate with a minor. While the term may encompass both those meanings, it is still vague, because it does not adequately inform Petitioner of what is prohibited.

The problem with using such a vague term as "contact" is worsened by the lack of a knowledge or intent requirement. Petitioner suggests a probationer should not be in violation for unintentional conduct, since such a requirement would be almost impossible to comply with. Numerous examples of unintentional and otherwise innocuous conduct can be readily imagined. For instance, what if a probationer sees a minor in imminent danger, can

13

they tell them to look out? Or what if a probationer orders food from a minor server at a restaurant, is he in violation of his probation? Similarly, if a minor comes to the door of a probationer's house to sell something, is he in violation when he opens the door and tells them to leave? Or what if Petitioner's girlfriend had been in an accident, and was unable to notify her children. Would Petitioner be prevented from doing that by this condition? The fact that such examples, and numerous others, can be readily imagined demonstrates the vagueness of this condition. If the intent is to prohibit such contacts, then the court must be more specific.[3]

Although it was not present in this case, the concept of contact as physical touching is equally troublesome. For example, if a defendant is in a crowd and a minor bumps into him, is he in violation of his probation? Alternatively, if a minor walks near him, is that "contact". Similarly, if a minor waits on him at a store or restaurant, is he in violation of his probation if he pays them, or takes change from them? Again, the existence of so many innocent scenarios indicates the vagueness of this condition.

The vagueness of the a similar term was addressed in *United States v. Schave*, 186 F.3d 839 (7th Cir. 1999). There, the defendant was prohibited from associating with organizations or individuals who espouse violence or the supremacy of the white race. The court noted there would be constitutional problems if there was no scienter requirement, holding that a condition is unconstitutionally vague if it does not afford a person of

---

[3]The only way to effectively prohibit such contacts would be to limit a defendant's ability to interact with society.

reasonable intelligence with sufficient notice as to what conduct is prohibited. A condition is also vague or overly broad if a defendant must guess as to whether particular conduct is prohibited. The court noted that as written the condition could be violated by unknowingly being around a prohibited individual or group. However, the court solved the problem by imposing an intent requirement. In this case the court imposed no such requirement, instead finding petitioner's conduct was prohibited, even though it was not intentional.

The primary problem with a vague condition is in the leeway it grants a court. A court can interpret such a condition however it wants. Based on the court's own interpretation, it could revoke a defendant's probation no matter how unreasonable the interpretation may be. Such a condition allows a court to revoke probation almost at will, which due process should not condone. c.f. *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164 (1987) (court cannot adopt so unnatural an interpretation that the regulation would fail to provide adequate notice)

As shown by the above discussion, petitioner suggests this condition of probation was unconstitutionally vague in violation of the Due Process Clause and was unenforceable. As such, error was committed when the trial court revoked Petitioner's probation based on a violation of such a vague condition of probation.

### III. PETITIONER'S COUNSEL FAILED TO RENDER REASONABLY EFFECTIVE ASSISTANCE OF COUNSEL, WHERE HE FAILED TO RAISE A DUE PROCESS OBJECTION TO THE USE OF VAGUE CONDITIONS TO ADJUDICATE PETITIONER'S GUILT.

As detailed at length in the previous issues, petitioner was subjected to a provision

15

in his probation that prohibited unsupervised contact with anyone under the age of 21. If the court clerk in the instant case happened to be under 21 when requesting petitioner's signature, he would have violated his probation within seconds of its imposition. There was no objection by counsel to the terms of the probation, which, on their face, are vague, unreasonable, and provide inadequate notice.

## Argument and Authorities

"Unless a defendant charged with a serious offense has counsel able to invoke the procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself" *Cuyler v. Sullivan,* 446 U.S. 335, 343, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980). The Supreme Court has held that the right to counsel guaranteed by the Constitution is a right to the "effective assistance of counsel." *See United States v. Cronic,* 466 U.S. 648,654, 104 S.Ct. 2039,2044,80 L.Ed.2d 657(1984). Absent competent counsel, ready and able to subject the prosecution's case to the "crucible of meaningful adversarial testing," there can be no guarantee that the adversarial system will function properly to produce just and reliable results. *Cronic,* at 656, 104 S.Ct., at 2045. *See Strickland v. Washington,* 466 U.S. 668, 684-687, 104 S.Ct. 2052, 2062-2064, 80 L.Ed.2d 674 (1984). In *Strickland,* the U.S. Supreme Court established a two-prong test to determine whether counsel is ineffective at the guilt/innocence phase of a trial.

First, an error must be such that it indicates "deficient performance" by counsel, falling outside the "wide range of reasonable professional assistance." *Id.,* at 687, 689, 104 S.Ct., at 2064, 2065. Second, the error must give rise to prejudice, defined as "a

16

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,* at 694, 104 S.Ct., at 2068.

The *Strickland* prejudice standard is often misunderstood, however. The Supreme Court held that prejudice can be demonstrated by less than a preponderance of the evidence. As the Fifth Circuit has stated:

> "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070. We ask if there is a "reasonable probability that, but for counsel's unprofessional errors, the result ofthe proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. *Strickland* explained that "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.* (Emphasis supplied).

*Belyeu v. Scott,* 67 F.3d 535, 540 (5th Cir. 1995). The ubiquitous "result of the outcome would not have been different" holding in probably thousands of cases relying on *Strickland* completely fails to acknowledge that the standard is less than a preponderance.

In this case, prejudice is relatively easy to establish. Had counsel promptly objected to the conditions, the court would have been forced to either remove or modify them. If they had been removed or modified in a constitutionally acceptable manner,  there would have been no basis for a motion to adjudicate. As a result, by failing to ensure petitioner was not subjected to vague, incomprehensible conditions, counsel placed petitioner in a position where it was impossible to not violate a condition of probation. Petitioner suggests that should be sufficient to establish prejudice, and therefore he is entitled to relief.

17

**IV.** *Texas Code Crim. Proc. art. 42.12* § *5,* **is unconstitutional because it- deprives defendants of a meaningful appeal in violation of Due Process, and also deprives petitioner of Equal Protection in violation of the United States Constitution.**

As discussed above, the trial court imposed a condition that petitioner not have "unsupervised contact with anyone under 21 at anytime, in any circumstances (work, home, family, friends, etc)." Once thirty days elapsed from when petitioner was placed on deferred adjudication, no appellate review was available of the court's orders. Petitioner's guilt was adjudicated because he was dating a nineteen year old woman and he was nice to her younger siblings. He was then sentenced to the maximum term, 20 years in prison.

Under *Texas Code Crim. Proc. art 42.12,* defendants who receive probation, versus deferred adjudication, can appeal the revocation of their probation. *See, Olowosuko v. State,* 826 S.W.2d 940,942 (Tex.Crim. App. 1992)(Overstreet, J., concurring)(explaining that a defendant given "regular" probation certainly has a right to appeal a revocation of his probated sentence. Such a "regular" probation can only be revoked based upon a violation which the trial court finds proven by a preponderance of the evidence, *citing DeGay v. State,* 741 S.W.2d445, 449 (Tex.Crim.App.1987); *Cardona v. State,* 665 S.W.2d492, 493 (Tex.Crim.App. 1984)).

*InFaheem-El v. Klincar,* 841 F.2d 712,727(7th Cir. 1988), the Court explained:

The Equal Protection Clause provides that no state shall "deny any person within its jurisdiction equal protection of the law." *U.S. Const Amend. XIV.* The essence of this provision is straighiforward. It commands that states treat similarly situated people in a similar manner. *See City of Cleburne, Texas v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249,3254,87 L.Ed.2d 313 (1985). To determine whether state legislation or official state action violates the Equal Protection Clause, a court must employ a two-step analysis. First, a court must determine whether the state

· 18

action infringes upon a fundamental right or discriminates on the basis of a suspect category. If so, the legislation or official state action is reviewed under either a strict or intermediate scrutiny standard.

Texas courts have considered this issue at length and decided against petitioner's claims.[7] However, petitioner presents this federal constitutional issue, believing that this state action, with no compelling state interest to treat probationers differently - violates Equal Protection.

### V. Imposition of a 20-year sentence after petitioner was placed on probation for a period of 10 years and had begun complying with the conditions of his probated sentence violated the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution.

Petitioner was placed on deferred adjudication on May 10, 1995. He was adjudicated guilty on May 20, 1999, more than four years later. During his probationary term, he completed everything requested of him including, hours of community service, payment of fees and attendance at counseling sessions. Although not imprisoned, based upon the numerous and onerous conditions of probation, petitioner was being punished for the offense and had begun to discharge and complete terms of his probationary sentence.

### VI. Petitioner's plea was involuntary and violated Due Process of law and the Ex Post Facto provisions under the United States Constitutions because he was informed before he entered his plea that if his guilt was ever adjudicated he would be allowed to appeal his conviction; however subsequent to the entry of his plea, the Court of Criminal Appeals decided *Manuel v. Stare,* which denied petitioner a right he had relied upon in pleading guilty.

When petitioner pled guilty, he did so with the understanding that if his guilt was adjudicated he could appeal. At that time, that was the law. Later the Court of Criminal Appeals interpreted the law differently than it had been previously interpreted and

petitioner's right to appeal was abrogated. Although petitioner did attempt to appeal, the Court of Appeals decided it had no jurisdiction to consider his issues.

Petitioner was told he would have the right to appeal his conviction should his guilt be later adjudicated. Although his trial attorney has no specific recollection of telling petitioner this, he cannot specifically refine petitioner's memory regarding this information. Having the ability to appeal at a later date if his guilt was ever adjudicated, was a factor petitioner considered in deciding to plead guilty. (See Appendix C).

### VII. Petitioner's plea was involuntary because he was not admonished regarding the rights he waived whçn pleading guilty or the consequences should his guilt be adjudicated.

The admonishments regarding the pleas in both cases establish that only one box was -marked — that regarding the range of punishment. The other admonishments were never explained to petitioner, nor did he realize what would happen to him upon adjudication.

In the instant case, clearly only one admonishment was initialed — that regarding the proper range of punishment. As petitioner has previously presented, had he known of the correct range of punishment, he would not have pled guilty. Additionally, had petitioner been fully aware of the constitutional rights he waived, and, specifically, what would happen should he be adjudicated, he would not have pled guilty.

### IX. Petitioner's plea was involuntary because he was never admonished that as a direct result of his guilty plea, he would be required to register with the State of Texas as a sex offender.

A guilty plea is voluntary-if the defendant is advised of all direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, *755*, 90 S.Ct. 1463, 1472 (1970). Courts have

20

held that the requirement to register as a sex offender is not a direct consequence of a plea of guilty to the offense of sexual assault. *See, e.g., Ruffin v. State,* 3 S.W.3d 140, 143 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd);); *Guzman v. State, 993* S.W.2d 232,236 (Tex.App.--San Antonio 1999, pet. ref d) (holding that failing to admonish a defendant on his statutory duty to register as a sex offender did not invalidate the guilty plea); *In re B.G.M.,* 929 S.W.2d 604, 606-07 (Tex.App.--Texarkana 1996, no pet.) (holding that the possibility of required sex offender registration is not a mandatory admonishment in a juvenile proceeding because the registration requirement is a remedial and collateral consequence of the plea). In *State v. Jiinenez,* 987 S.W.2d 886, 888 (Tex.Crim.App. 1999), the Court of Criminal Appeals held that a guilty plea will not be rendered involuntary by the lack of knowledge as to some collateral consequence.

While some courts may consider the registration requirement remedial and not punishment — a mere collateral consequence — this still does not obviate the necessity that to be voluntary petitioner must have knowingly entered into a guilty plea. He must have been aware of the consequences. He was not. The Sexual Offender Registration program in Texas is not simply a registration with the local police agency. In fact, it is open for all the world to see, via the internet. *See, http://records.txdps.state.tx.us.* Petitioner does not merely register his name. He is also required to submit additional personal information, including his hair color, height, weight and shoe size. Such facts are available to all people of the entire world, not just Texas.

## IX. The Sex Offender Registration Program violates the Eighth Amendment ban

21

**against Cruel and Unusual Punishment**.

The Eighth Amendment to the United States Constitution and Article I, Section 13 of the Texas Constitution prohibit cruel and unusual punishment. The collateral consequences of this registration programs are cruel and unusual and violate the proportionality doctrine. In *Robinson v. State,* 80 S.W.3d 709,714 (Tex. App. — Houston [1St Dist.] 2002, pet. granted),the Court held that under the rationale of *Trop v. Dulles,* 356 U.S. 86, 78 S.Ct. *590, 2* L.Ed.2d 630(1958), that the sex offender registration program was neither cruel, nor inhuman. However, reliance upon *Trop,* is misplaced. In *Trop,* the defendant had been convicted of wartime desertion and had been stripped of his citizenship. *Id.* The Supreme Court's rationale was that a statute is not "nonpenal" if it merely imposes a disability and was not to punish, and the statute had a legitimate governmental purpose. *Robinson,* 80 S.W.3d at 715, *citing Trop,* 356 U.S. at 96, 78 S.Ct. at *595-96.*

A sentence within the range of punishment may still violate the Eighth Amendment if it is grossly disproportionate to the offense committed. *Solem v. Helm,* 463 U.S. 277,289, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The punishment must be proportionate to the crime. *See Solem,* 463 U.S. at 289-90. In *Solem* , the Supreme Court set out three factors the reviewing court should consider when determining whether the sentence is disproportionate: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the punishment for the same crime in other jurisdictions. *See id.* at 292.

22

In the instant case, the registration scheme is akin to the public flogging of colonial times; it exposes petitioner to a worldwide audience for years and years and is opprobrious. Petitioner suggests this is violative of Due Process and the Eighth Amendment.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully requests the Court issue the requested Writ of Habeas Corpus and conduct a hearing thereon, and that Petitioner be ordered discharged from further confinement pursuant to the illegal judgment and sentence in this cause.

Respectfully submitted,

Walter M. Reaves, Jr.
P.O. Box 55
West, TX 76691
Telephone: 254-826-3713
Telefax: 254-826-5572
S.B.O.T. #:16644200

ATTORNEY FOR PETITIONER

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Application for Writ of Habeas Corpus was mailed to John Cornyn, Office of the Attorney General, P.O. Box 12548, Capitol Station, Austin, Texas 78711, On the same date it was filed with the Court.

Walter M. Reaves, Jr.

BENNETT & SECREST, L.L.P.
ATTORNEYS AT LAW
THE NIELS ESPERSON BUILDING
808 TRAVIS STREET, 24TH FLOOR
HOUSTON, TEXAS 77002

ROBERT C. BENNETT
BOARD CERTIFIED CRIMINAL LAW • TEXAS BOARD OF LEGAL SPECIALIZATION

GEORGE McCALL SECREST, JR.
BOARD CERTIFIED CRIMINAL LAW • TEXAS BOARD OF LEGAL SPECIALIZATION

TELEPHONE: (713) 757-0670
FACSIMILE: (713) 650-1602

February 4, 2002

~~May 2, 2001~~

I, the undersigned client, hereby employ and retain George McCall
Secrest, Jr. of the law firm of Bennett & Secrest, L.L.P. to
represent Michael J. Siemer in the following matter: the filing of
Article 11.07 post-conviction writs of habeas corpus in the 208th
District Court in Cause Numbers 9420151 and 9410142 and subsequent
proceedings regarding the same in the Texas Court of Criminal
Appeals, and if necessary, the filing of a Section 2254 writ of
habeas corpus with the United States District Court and appealing
the same to the United States Court of Appeals for the Fifth
Circuit.

For such professional services, I hereby agree to pay the
nonrefundable retainer of ████ receipt of ████ is due upon
the signing of this contract, with the remaining ████ due within
180 days of this date.  The firm will bill at the rate of ███ per
hour for Mr. Secrest and ███ per hour for Jani Maselli.  In the
event the said retainer is exhausted, the client will be billed on
a monthly basis for work performed.  If, however, the client is
granted relief in his pending petition for discretionary review in
the Texas Court of Criminal Appeals, or is granted relief in post-
conviction proceedings, all unearned fees will be returned.  If
counsel is unable to continue representation for natural causes
such as health or injury, all unearned fees will be refunded.

I further agree to pay the necessary expenses incident to such
representation separately as these expenses are incurred by the
attorney.  These expenses may include, but shall not be limited to
fees for private investigators, expert witnesses, court reporter
services, travel expenses, photographs and photographers,
telephone, court fees, and any and all other expenses the attorney
considers necessary for proper representation in this case.  It is
expressly understood that no extraordinary expenses will be
incurred by the attorney in this case unless prior permission is
given by the client; however, prior permission is not required for
incidental expenses such as telephone calls, photocopying expenses,
postage, etc.

It is further agreed and understood that the attorney made no
promises to me as to the outcome.

In the event of the death of the defendant, any unearned fees will
be returned.

Exhibit "A"

I have read this contract and the conditions contained herein have
been carefully explained to me, and I agree to all of these terms.

_____          _____
George McCall Secrest, Jr.               Gary N. Siemer
                                         4230 Bayglen Court
__2/6/2002_____                     Houston, Texas 77068
Date                                     (o) 281-893-9682

BENNETT & SECREST, L.L.P.

ATTORNEYS AT LAW

THE NIELS ESPERSON BUILDING

808 TRAVIS STREET, 24TH FLOOR

HOUSTON, TEXAS 77002

ROBERT C. BENNETT
BOARD CERTIFIED CRIMINAL LAW · TEXAS BOARD OF LEGAL SPECIALIZATION

GEORGE McCALL SECREST, JR.
BOARD CERTIFIED CRIMINAL LAW · TEXAS BOARD OF LEGAL SPECIALIZATION

TELEPHONE: (713) 757-0679

FACSIMILE: (713) 650-1602

May 5, 2005

Mr. Mike Siemer
TDCJ-ID #1005525
Dalhart Unit
11950 FM 998
Dalhart, Texas   79022

Dear Mike:

I am in receipt of your letter of 5/2/05. I sent you a letter yesterday that has crossed in the mail. On April 27, 2005, the Court of Criminal Appeals denied you relief in Cause No. 9420151-A and apparently on the same date granted you relief in 9420142-A. We did not receive notice of the Court's action until several days later. (You indicated in your letter that you had received notification of the first order.) In fact, we have yet received notice of the order granting relief. We obtained that ourselves from the Court's website. By our computations any federal writ would have had to be filed on or before May 3, 2005, and that has not been accomplished in your case. I sincerely apologize to you for that. By the time I got both orders together and pulled your file, the deadline had passed.

It was our understanding that the findings of fact that Judge Collins made on October 14, 2004 had already been mailed to you — whether they were lost in the mail or we, in fact, failed to send them, I don't know but I take responsibility for you not receiving them before now. (I am enclosing copies for your review with this letter.) I do want you to know, however, that in light of the proposed fact findings that Judge Collins made in your case, that were ultimately adopted by the Court of Criminal Appeals, it was highly unlikely, that a federal court would have granted you relief in any event. When the dust settles, Mike, this gets down, in large part, to a credibility call between your recollection of the events, that of Jim Leitner, and the credibility of other witnesses, as well. While we do not doubt, in any way, your veracity, Judge Collins did not agree with our proposed findings of fact and adopted the state's proposed findings which resulted in credibility determinations that, in our opinion, could not be overcome in federal court.

EXHIBIT "B"

Page 2

On a positive note, we are pleased that the Court of Criminal Appeals granted relief in the second cause number. As I mentioned in my letter yesterday, it is way too early to forecast what the prosecution will do in that case. Hopefully, they will not decide to proceed against you in light of the fact that you are currently serving a 20-year sentence on the other case but we will have to wait and see what position they take.

It is my understanding that you will be bench warranted back to Houston to appear in Judge Collins' court on May 20. As I was telling your folks on the telephone today, you all need to make a determination as to whether you want me to continue in the representation or whether you want someone else to handle your case from this point forward. Please feel free to contact me and I will do my best to answer any questions that you have. Take care, Mike.

Very sincerely,

GEORGE MCCALL SECREST, JR.

GMS/dg
cc:    Gary Siemer

## INAMTE'S DECLARATION

I, Michael Joseph Siemer, TDCJ-ID Number 1005525, being presently incarcerated in the Dalhart Unit, declare under penalty of perjury the following information is true and correct:

My name is Michael Joseph Siemer.   I am currently 34 years old and presently incarcerated in the Dalhart Unit in Dalhart, Texas.  I am the same Michael Siemer who was charged in 1994 in Harris County of indecency with a child and sexual assault, cause numbers 9420151 and 9420142.  In 1995, I pled guilty to the charges and received a type of probation called deferred adjudication.  In May, 1999, my deferred adjudication was revoked based on technical violations.

In the indecency with a child case, I was told the range of punishment was two to ten years if I messed up on my probation.  That was the only admonishment I initialed and the only one explained to me.  When I was revoked off my deferred adjudication, the judge then sentenced me to twenty years.  Had I known that the range of punishment was up to twenty years, I would not have pled guilty.

I was told by my attorney in his office that if I was revoked, I could appeal my case. That was in my mind when I decided to take the deferred adjudication and was one of the main reasons I agreed to plead guilty.  After I was revoked, I was told the Court of Criminal Appeals had decided between the time I pled guilty and the time I was revoked that I no longer had the right to appeal.  The Court of Appeals dismissed my appeal saying it had no

1

*Exhibit "D"*

jurisdiction. Had I known that my right to appeal would be denied, I never would have pled guilty.

I was never explained the terms of my probation, specifically, the no contact with under 21. Since I had been charged with sexual offenses, I naturally assumed no contact meant no illicit or illegal contact with anyone under the age of 21. Had I known that dating an adult woman and treating her family kindly would result in my deferred adjudication being revoked, I never ever would have plead guilty.

Had I known that I would have to register as a sex offender, I never ever would have pled guilty. Although I know the courts consider this unimportant - this affects everything about who I am and what I can do with the rest of my life. I would have fought these charges with everything I have, had I known they would haunt me the rest of my life.

*Michael Joseph Siemer*
MICHAEL JOSEPH SIEMER

Date: _11-29-2002_

2